Good morning, Justices. I represent Appellate Mr. Joseph Haghnazarzadeh. This is really a case that involves a pro se taxpayer in tax court who had a Zoom trial without counsel and was very confused. I realize that the law, there's not a lot of good law, but there is a case I want you to note in our reply brief, Christensen, which is a Ninth Circuit case that essentially holds pro se taxpayers to a lower standard. TN That case is about pleading though. Were you able to find anything that talks about compliance with rules of practice and things like that beyond just how you construe pleadings? I couldn't find anything. There's not a lot of help there. But in any event, that's really not my major issue. I mean, you know, the issue is, if you go to Taxpayer Bill of Rights, you know, Internal Revenue Code 7803, small a3c, a taxpayer is not, really should not pay any more than the proper amount of tax. And there were, there's clearly a couple things that I'm going to start with. You know, there was, he had a repayment of a loan. He had a sale. He really didn't have an opportunity to present, you know. TN Well, he did have the opportunity. That's not the problem. He just didn't do it. TN Well, no, I understand. But still, you know, 7803, I mean, I don't think the government wants to get any more tax than necessary. But getting into the real, the key point of the case, there are stipulations. And they're here. And the stipulations were ignored. And the stipulations in the computations total about, you know, for each year, it's about a million seven, approximately, for 2011 and about 154,000 in 2012. They were ignored. And in the computations, they were not considered. And when you look at the 4549A, which is the notice of deficiency, that had a certain amount of ordinary income. And then there are 50, I believe the form is 5278, which is there, 5278, which is the computations pursuant to the 155 theory. TN So, isn't the onus on the taxpayer to keep the records of these transactions so that when the IRS comes in, they can just say, here's the documentation for, this was a transfer, this was, you know. And the government conceded. It's a, you know, I'll turn you right. But you weren't, your client wasn't required to pay what the government conceded, was it? I believe, if the government conceded, I think the stipulations are binding under Rule 91, they're admissions, they're like judicial notice. And I think the computation should have reflected those. I think it's a major issue. I think the government says that they did reflect them. They didn't. How do we tell that? How can I tell that? Let me tell you. How do we tell that? How do we tell that? Okay, let me walk you through it. Okay. Good question. Let me walk you through it. Let's go to Volume 2, Excerpt from Record Number 28. What is it? Don't tell me. Well, it's called Form 5278. 5278? It's called Statement of Income Tax Changes. I'm not sure I have it in front of me, but. Well, what that, oh, okay. What it is, is that is the document the government uses. That is how the final tax was computed. And if you go to the only adjustment of any major nature was there was a net operating loss carryover that was not part of the Notice of Deficiency, but that was accepted, and that reduced the tax. That's the only adjustment of consequence. And how do we know? Well, ordinary income in the 5278 uses, is it $4,000,854,849 for 2011 and $1,000,868,212 for 2012. They do not reflect the non-taxable transfers. They do not reflect the non-taxable deposits that were agreed to by the government. When you say they don't reflect, do you mean they weren't deducted? Yeah. So the question is how, what can we, can we look at that document and figure out they weren't deducted or do we have to go somewhere else? I'm going to go to the Notice of Deficiency. I'm going to take you back there and walk you through the numbers because it's basically a numbers case. Okay, so let's go to the Notice of Deficiency, and that's going to be, let's see, I believe it's form 4549A, so let me find that here. Oh, actually I will walk you through the stipulations so you can see them yourself. Okay, volume two excerpts of record, page 195 lists non-taxable deposits. $939,994. Okay, that was agreed to. That's a stipulation. Okay, then let's go to, let me find that here. Let's follow that through to, volume two excerpts of record 190 lists $852,000 of transfers. Those are stipulations filed with the court. For 2012, it's a smaller number, but those are in the stipulations as well. So let's go to the Notice of Deficiency, which is where the government starts with the assessment. That's going to be, it's called the 90-day letter, so that's going to be volume two excerpts of record 207. That's the 90-day letter. And that's, you know, as you know, that's part of the Notice of Deficiency, and that's the IRS's proposed assessment. And if you look there, it's the same identical numbers. For ordinary income $4,000,854,849, $1,000,868,212. They do not reflect any of those stipulated agreed-upon adjustments, and they were ignored by the trial court, and the government, for some reason, wouldn't concede it either. Rule 91, they're the force of law. The tax court rule 91, that is. So as a result, the deficiencies should be reduced by the stipulated transfers and deposits for each year, 2011, 2012. And if that were done, what would the numerical difference be? Oh, I would say probably, let's see, $1.7 million. About $1.8 million for two years of reduced taxable income, that's got to be probably something like $700,000. It's a big number. And again, you know, I got involved in the 155 hearings. I brought this forward. I brought this forward in a reconsideration, and it was, probably should have had a hearing on the 155, but that's discretionary. And it would have been easier to explain these things, but it got by, and, you know, I took the case over after it had been tried. And the computational is a separate, it's not a hearing, but it's a separate, you know, the last end of the tax trial. Are you asking us to remand to the tax court for a redetermination? Pardon me? Are you asking us to remand to the tax court for a redetermination, taking into account these items? I, that would be a very, I agree with that. All right. Why don't you reserve the rest of your time, and let's hear from the IRS. Oh, pardon me? Reserve the rest of your time, and we'll hear from the IRS. Yeah, go ahead. Thank you. Thank you very much. He's, you can sit down. Oh, I go sit down. Okay. Yeah, I'm not familiar. We've got, yes, we have Mr. Rosenberg. Yeah, sorry. Yeah, with the Zoom stuff, I'm not sure how that works. Sorry about that. You can watch him on that screen. Okay. Thank you. Sure. Thank you. Mr. Rosenberg. Thank you, Your Honors. May it please the court, Isaac Rosenberg for the Commissioner of Internal Revenue. If I may, I'd like to address a few of the points that my friend just raised in his presentation. The first concerns Section 7803, and I think for at least three reasons, his arguments based on that statute are waived. The first is he never raised 7803 in the tax court. Second, he didn't raise it. Counsel, can you please lower your mic on your end? Thank you. The volume. The volume. Turn it down a little. Yeah, it's very loud. Is that better? Yes. Sorry about that. So, 7803, not raised in the tax court, waived for that reason. Second, not raised in the opening brief, waived for that reason. Third, mentioned in the reply brief in a skeletal way and raised for that reason, but even if not waived, that section of the statute, of the code, has absolutely nothing to do with this case. All right. But I guess the bottom, the question is, did you, there's a stipulation here that some things, and your opposing counsel says, well, those things were deducted, and these people were representing themselves at a, you know, pro se bench trial via Zoom, and it wasn't the best process that they got. And, you know, so what's your answer to that? The argument that they're making about not having an opportunity. I'll address that in a second to the extent that they're arguing an issue of fairness or due process, but with respect to the calculation itself, I don't understand why they don't acknowledge that the revenue agent's bank deposit analysis expressly omitted both of these two transactions, the $710,000 transaction and the $327,000 transaction. Is there a particular document or comparison that we can look at to establish that? Because I have to tell you, as I was going through this, you know, one side says it's deducted, the other side says it isn't. It would have been nice to have some sort of a spreadsheet in the briefs that would have shown this, and I was looking all over and couldn't find anything where I could just see it all in one place. Okay. So we have two footnotes in the red brief in the discussion of these transactions. If you give me a second, I can give you the exact footnote numbers where we go through which parts of the record show how the transaction was accounted for in the bank deposit analysis reflected in the notice of deficiency and then reflected in the stipulation. Okay. So this is footnote four on page 21. Okay. So that says that one of the subtractions included the $327,000 check. So if we look at the documents that are cited in there, will we see a line item for $327,000 backed out, or is it buried within some bigger number? It's not buried. If your honors have the appendix handy, the excerpts, I can direct you to the page and we can look at it together. So I'm looking at excerpts of record page 286. And this is the sort of an account summary sheet for one of the nine accounts that the Hognes-Arzadehs controlled that were used for the bank deposit analysis. On page 286, there's a column that says non-taxable deposits. The last number in that table says $327,000. For the $710,000 deposit or transfer, on page 285 of the excerpts, there's a column that says transfers. What page? Page 287? 285. 285, sorry. There's a column that says transfers. The second figure down from the top says $720,000. It accounts for two transfers, a $10,000 transfer and a $710,000 transfer. And then in the description in the stipulation of how the bank deposit analysis was conducted, it explains that transfers were omitted from the calculation of taxable income and that non-taxable deposits were omitted. And then as I understand your position on the other thing that's the other deposit, which I think is $335,000, which is claimed to be non-taxable, you're saying that wasn't part of the stipulation and there wasn't any evidence offered to show that that was non-taxable. Am I getting that right? Correct. And in the reply brief, they keep asserting that that transaction, the $335,000 transaction was identical to the $327,000 transaction and it wasn't. There's no evidence of that. Let me tell you one little thing that threw me on the 327. The brief, as you point out, in your brief you say, well, that was backed out and you cite these various things. But then when you look back at it, I guess after the hearing there's a process of where each side submits a computation and the IRS's response to the petitioner's computation says the $327,000 shouldn't be backed out because there wasn't any evidence offered to show that it shouldn't be included in income. So that's what kind of threw me or one of the things that kind of threw me. Is there any way of explaining that? My memory of the document, and I apologize, I don't have it clearly, clearly in mind, but my memory of that document was our counter-arguments to the Hogness Arzadeh's request that those amounts be double counted. I see. Okay. So he said it was already accounted for in the bank deposit analysis and they've offered no additional evidence in the record to show that they were entitled to yet another $327,000 deduction of their taxable income for that tax year. Now, with respect to the overall fairness and the opportunities that the Hogness Arzadeh's had to make their case, they had more than just the two plus years from when they filed their petition to the time of their trial. They would have had time to participate in the audit with the revenue agents and to submit documents then, and they didn't, at least not the documents that they're claiming now show they're entitled to these reductions in taxable income. They would have had and did take advantage of the opportunity after the notice of deficiency was issued to go to an administrative proceeding before the IRS in the Office of Appeals, and these documents, as far as I know, were never given and no proof was offered to the appeals officer to substantiate the reduction in taxable income that they're claiming now. Then they had, again, two years, five trial dates, four continuances, two stipulations of settled issues and a stipulation of settled facts, and over 700 pages of stipulated exhibits to offer proof of their claims, and they didn't. Then they had their trial and didn't offer the proof. Then they had their motion for reconsideration to which they attached the documents that are in the appendix and which we explained in our brief don't actually show that they're entitled to the reductions in income that they're claiming. And even on appeal, they still aren't offering record evidence, competent evidence to show that they're entitled to. Can I ask you a question? How common is it for folks to represent themselves when this much is involved in the tax court? Is it common or not so common? I don't know the answer to that, but to the extent that the court has concerns about it, I think that cuts both ways, because if I were a taxpayer who was looking at a get ready for a trial, I might think about retaining counsel. Well, that's kind of why I wondered and why I asked it the way I did. And the Hagnazarsades, frankly, were offered assistance by the tax court. So on page 41 of the supplemental excerpts of record in November of 2020 before the tax court trial, the tax court gave them a list of law clinics, tax law clinics in Los Angeles that they could reach out to to seek assistance if they qualified. If they weren't injured and didn't qualify, then presumably they had money available to them to retain counsel, and for whatever reason they chose not to. Did they reasonably believe that their accountant could represent them before the tax court? No. If they actually believed that, that expectation was not reasonable for the reasons we explained in our brief, and yet for another reason. I don't think there's any actual competent evidence in the record to support that assertion. There's no testimony. There's no declaration. There's no sworn statement. We only have the assertions of counsel in a brief, which is not evidence under the tax court rules. The tax court... There's a suggestion they might have thought so, meaning they tried to get his testimony in, which was rejected because he'd not been put on the witness list. I mean, it's clear that they would have been helped enormously by lawyers, but they might well have thought that the accountant was going to do them some good. I recognize that afterwards he could... I'm going to mispronounce the name. Mr. Garzadeh didn't, in the end, say, well, here's what he would have said. I mean, I understand all of that, but it's not implausible to think that they thought that the accountant would help them out. I understand, Judge Fletcher, but what we do, what little we do know of what they say in their briefs about what Mr. Boudaille would have testified to, to the extent it would have been facts, those are facts that Mr. Hognizarzadeh was a recipient witness to and should have been able to offer on his own, and he did offer testimony in support of his own claims at trial, just not enough information. And to the extent that he would have made arguments about a just a basis, you know, those are arguments, it's not testimony. And I see that I'm very up against my time, but, you know, without a proffer and without some declaration from the Hognizarzadehs, there's no competent evidence to show that they were actually prejudiced among the many problems with their arguments about the exclusion of Mr. Boudaille. So, I'm happy to answer the Court's questions if there are more. I see that I'm past my time. The Tax Court did not commit any abuses of discretion, did not commit any clear errors in its findings. The motion for reconsideration was properly denied. The witness was properly excluded, and we ask the Court to affirm the decisions below. All right. Thank you very much, Counsel. Mr. Weiss, you have about a minute left. I strongly differ with Mr. Rosenberg's categorization of this case. True, there was an audit. He went through an audit process. He gets a notice of deficiency. That's where the assessment begins. Excerpts of Record 207 is Form 45498, Notice of Deficiency. That is the original assessment. Ordinary income, $4,854,849. Ordinary income, $1,868,212. I recited there were stipulations. Binding on both parties, Rule 91, ignored. Let's go to the computations, which are post-trial. Irrelevant whether Mr. Hoggan, his testimony, or any of that thing, these are numbers. Let's go to 5278, okay? I'm sorry. Let's go to my excerpts of Record 22. I recalculated the numbers myself, and I came up with lesser numbers. In fact, they're even less than that because there's more non-taxable deposits and transfers. So I'm looking at that particular document. It's a Form 5278, Excerpts of Record 2007. Yeah, our office prepared that. So this is like a sample of what it should have looked like, in other words? Right, and it actually should be less because there's more non-taxable. Based on the stipulations, there's more non-taxable transfers, and there's more non-taxable deposits. So if you go to the government's 5278, which is Volume 2, Excerpts of Record, at the top, NOL carry forward, $1,303,849. That was an adjustment made through the account, Mr. Boudaille and the government. But if you look at ordinary income on 7C, it's still $4,008,54849 and $1,008,68212. They totally ignored the stipulations. Basically what you're saying is that from the original notice of deficiency to this computation, which was after the hearing, that number, the ordinary income, didn't change. And that's what you're saying is the evidence that they didn't back out these stipulated amounts. Correct. Correct, Your Honor. What about the thing that opposing counsel cited where he was going through this account summary sheet and so on, where he said it was pretty clearly backed out? I don't understand it. I don't understand it. It's not very clear to me. They've had many opportunities to explain it. Mr. Mellom, who's a very fine attorney, the IRS attorney, I happen to know, but not – That's the one who did the hearing? Right. He's a good guy. Couldn't explain it. Went right past the judge, and I haven't had any – Mr. Rosenberg hasn't explained it. They take a strong position, and they say, look, he had an opportunity. He had a hearing and all that. But, in fact, the numbers do not lie. And if you run the numbers, they are wrong. Okay. Thank you, counsel. Hagan Zarzadeh v. the Commissioner of the IRS will be submitted, and we'll take a look at those numbers. Appreciate your time. We will. Thank you. Thank you. And we will take up Solais v. Pfeiffer.
judges: WARDLAW, FLETCHER, Kennelly